CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 2 6 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No. 7:18-cr-49** |
| **v.** | ) | |
| | ) | |
| **DIAMOND TOPAZ BROWN,** | ) | **By: Michael F. Urbanski** |
| | ) | **Chief United States District Judge** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On October 18, 2018, a federal grand jury returned a one count indictment charging defendant Diamond Topaz Brown with unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The indictment alleges that on or about September 20, 2018, Brown, having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess, in and affecting commerce, a firearm, that is, a Taurus, model PT111 G2, 9mm semi-automatic pistol. ECF No. 4, at 1. On February 5, 2019, the government filed a notice, ECF No. 31, pursuant to Rule 404(b) of the Federal Rules of Evidence. In this notice, the government stated its intention to admit three different items into evidence: (1) that Brown possessed loaded firearms on two prior dates, namely August 22, 2006 and October 19, 2012; (2) that Brown threatened to kill several individuals and their families and made other threats of violence in the days immediately preceding the charged offense; and (3) a probation form purportedly signed by Brown stating, "I will not use, own, possess, transport or carry a firearm." ECF No. 31, at 1-2.[1] The

---

[1] The government's notice indicated that the three items above "may be admissible as direct and intrinsic evidence of the charges in the [i]ndictment, and as such, this notice does not concede that Rule 404(b) is the only basis for admission." ECF No. 31, at 1.

matter before the court is Brown's motion to suppress, ECF No. 32, and exclude from evidence the three items above filed on February 11, 2019. On February 15, 2019, the government filed its response in opposition, ECF No. 33, to Brown's motion. On Monday, March 18, 2019 the court held a hearing on this and other outstanding motions. Upon consideration of the parties' arguments, a thorough review of the record, and for the reasons stated below, Brown's motion to suppress is **GRANTED in part and DENIED in part**.

## I.

The following background is a summary of the evidence the government expects to adduce at trial and is derived from the government's factual proffer. In the late hours of September 19 and into the early hours of September 20, 2018, members of the Roanoke Police Department, United States Marshals Capital Area Regional Fugitive Task Force, and Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) were attempting to locate Brown and serve her with outstanding state felony extortion warrants related to various threats of violence allegedly made by Brown. ECF No. 33, at 1. These state warrants had been obtained by Roanoke Police Department officers. Id. While searching for Brown, a red Infiniti SUV, associated with Brown's wife and understood to be driven by Brown, was located in the parking lot of a Roanoke-area pool hall and video gaming venue, Guys and Dolls. Id. The investigative team set up surveillance around the business in order to attempt to arrest Brown on the warrants. Id. at 1–2. While surveilling the parking lot, officers observed Brown exiting Guys and Dolls and approaching the red SUV. Id. at 2. Brown was observed opening the driver's side door of the red SUV, appeared to remove an item from the vehicle and to place it under her shirt. Id. Brown then walked over to a white Toyota

2

sedan, and opened the driver's side door. Id. Brown then appeared to remove the object from under her shirt and place it under the driver's seat of the Toyota. Id.

After she did this, officers moved in to arrest Brown, who had quickly re-entered Guys and Dolls. Id. Officers located Brown and arrested her without incident. Id. Officers looked in the driver's window of the white Toyota sedan, whose driver's seat Brown had just been seen placing an object under. Id. While looking in the driver's window of that sedan, officers saw part of what appeared to be a pistol protruding out from under the driver's seat. Id. The vehicle was secured, and a state search warrant was obtained and executed on the vehicle. Id. Upon searching the vehicle, a Taurus, model PT111 G2, 9mm semi-automatic pistol, serial number TIZ04805, was recovered from under the driver's seat. Id. The firearm was loaded with an extended magazine containing 29 rounds of ammunition. Id. The officer conducting the search also found a baggie with two grams of a white, rock-like substance. Id.

A review of Guys and Dolls' security camera footage from the Guys and Dolls parking lot allegedly showed Brown removing what appeared to be a handgun from the red Infiniti SUV and placing it under her shirt. Id. Brown can then allegedly be seen going to the white Toyota sedan, bending down into the car, where she appears to place the item under the front seat of that vehicle. Id. After her arrest, officers Mirandized Brown who, according the government, acknowledged her rights and checked the box on a form that she understood them.[2] Id. Brown went on to speak with officers, and among other things, denied having a firearm in her possession. Id. A query of Brown's criminal history reportedly

---

[2] Various police reports reviewed by the court indicate that despite acknowledging her Miranda rights and checking a box that she understood them, Brown refused to sign the document containing the box she had just checked.

revealed that she had been convicted of multiple felony convictions before the September 20, 2018 conduct charged in the current indictment. Id. at 3. Her prior convictions include felony convictions for eluding police, possession of controlled substances, possession of a cellular phone by a prisoner, and four separate convictions for manufacture, sale, possession of controlled substances, and revocation of a suspended sentence. Id.

The government indicates that an ATF Special Agent and Interstate Nexus Expert was provided a description of the above-listed firearm and concluded that it is a firearm, as defined in the federal code, and that it was manufactured outside the Commonwealth of Virginia, and therefore, since it was possessed in Virginia, had moved in and/or affected interstate or foreign commerce. Id. On October 18, 2018, a federal grand jury returned a one-count indictment, charging Brown with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Id. The indictment was filed with this court on the same day. Id. On February 5, 2019, the government filed its notice pursuant to Rule 404(b) of the Federal Rules of Evidence indicating evidence that it may seek to introduce at trial. Id.

The notice included two prior dates that Brown has possessed a firearm, which the government characterizes as similar conduct to what is charged in the present matter. Id. Specifically, on or about October 19, 2012, the government states that Brown possessed a loaded 9mm firearm, which was recovered under the driver's seat in a car she was driving. Id. The police also recovered a scale with residue on it and a quantity of white chunky substance in the center console and $540 in cash in the front pants pocket of Brown. Id. Brown was charged with possession of crack cocaine with the intent to distribute, possession of a firearm after being a convicted felon, and several other charges. Id. The government

4

indicates that pursuant to a plea agreement, Brown pled guilty to the cocaine charge and the firearm charges were dismissed. Id. at 3-4. The notice also included Brown's possession of a loaded handgun on August 22, 2006, in which she was in the front passenger's seat with a .22 caliber pistol in her lap. Id. at 4. When Brown was detained related to the 2006 incident, she stated that she just bought the pistol from another individual that night. Id. An officer obtained a juvenile petition for Brown for possessing the firearm by a person under the age of eighteen. Id.

The government's notice also included evidence that in the days leading up to the conduct charged in the indictment, Brown made various threats to kill several individuals and their families, that she would target area schools, and that she and others were going to shoot up and/or rob Sugar Ray's, another video gaming establishment in Roanoke, Virginia. Id. Specifically, the government indicates that multiple witnesses are expected to testify about threats Brown made from September 15-18, 2018. Id. On September 15, a witness allegedly heard Brown get into a disagreement with a cashier at Sugar Ray's and threaten to shoot up the business and rob it. Id. Another witness reportedly heard Brown call others to have them to bring their guns to the building to shoot up the place. Id. Also, on September 16, Brown was present at Sugar Ray's, and was playing video gaming machines. Id. On a video that was taken at this time, she allegedly can be heard saying that she was going to go to her car, get more money, and get her "strap," a term that the government claims is a reference to a firearm. Id. Again, on September 18, this witness saw Brown at Sugar Ray's, and Brown allegedly stated that she would shoot up the place. Id. This same day, several individuals allegedly received phone calls from Brown threatening to kill them and their

families. Id. Brown allegedly reiterated threats that she was going to have someone shoot up or rob Sugar Ray's. Id. Finally, in speaking with one of these individuals, Brown allegedly demanded $20,000 within twenty-four hours. Id. If this demand was not met, Brown stated that she would have some associates come down and handle things. Id. She also allegedly stated that if her demands were not met, Brown would target the schools and children of certain of the individuals she was threatening. Id. 4-5. Certain of these threats made up the conduct for the felony extortion warrants that officers served on Brown on September 20, when she was found to be possessing the charged firearm. Id. at 5.

Lastly, the notice included that during Brown's supervision for a prior felony conviction, she signed a form stating various conditions. Id. Specifically, on November 1, 2016, Brown reportedly signed a form stating that she would not, "use, own, possess, or transport or carry a firearm[,]" among other terms and conditions. Id. In her motion to suppress, Brown moves the court for the exclusion of all of the aforementioned evidence contained in the government's Rule 404(b) notice or, alternatively, that the court provide a limiting instruction upon its admission.

## II.

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Rule 404(b) is a rule of inclusion, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Moore, 709

6

F.3d 287, 295 (4th Cir. 2013) (quoting United States v. Byers, 649 F.3d 197, 206 (4th Cir. 2011)). However, if the government intends to offer evidence under this rule at trial, then it must, as it has done in this case, give the defendant "reasonable notice of the general nature of such evidence" beforehand. Fed. R. Evid. 404(b)(2).

The Fourth Circuit has outlined a four-factor test that must be satisfied before a court can properly admit prior-bad-acts evidence under Rule 404(b):

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. [Finally], (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). The fourth factor requires that all admitted Rule 404(b) evidence must satisfy Rule 403. United States v. Williams, 740 F.3d 308, 314 (4th Cir. 2014). Rule 403 instructs the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Not all other-bad-acts evidence, however, falls within Rule 404(b)'s scope. In particular, the rule does not apply to evidence of other bad acts that are intrinsic (as opposed to extrinsic) to the charged offense. United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996). Other bad "acts are intrinsic when they are 'inextricably intertwined or both acts are part of a

7

single criminal episode or the other acts were necessary preliminaries to the crime charged.'" Id. (quoting United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir. 1993)). Evidence is inextricably intertwined with the evidence regarding the charged offense if, inter alia, it "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." Id. (quoting United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007)). Though evidence of other bad acts that are intrinsic is not subject to Rule 404(b)'s limitations, such evidence must still satisfy Rule 403's requirement that its prejudicial value not outweigh its probative value. United States v. Seabolt, 554 Fed. App'x. 200, 206 (4th Cir. 2014).

Brown contends generally that the evidence contained in the government's notice fails to meet the first, second, and fourth Queen requirements because the evidence is neither (1) relevant to any element of the offense charged under § 992(g)(1), nor (2) necessary, i.e., probative of an essential element or claim of the offense. ECF No. 32, at 2-3. Brown also claims that the (3) probative value of the evidence is "clearly substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." Id. Indeed, Brown claims that the planned introduction of the aforementioned evidence can only be described as an inappropriate attempt to establish the "bad" character of Brown, which is specifically prohibited under Rule 404(b). Id. at 2.

### III.

The first Queen requirement, as interpreted by the Fourth Circuit, dictates that "[f]or evidence to be relevant, it must be 'sufficiently related to the charged offense.'" United

8

States v. McBride, 676 F.3d 385, 397 (4th Cir. 2012) (quoting United States v. Rawle, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988)); see Fed. R. Evid. 401(a), (b). "The more closely . . . the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." Id. "[E]vidence, to be relevant, 'need only to have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Byers, 649 F.3d at 208 (quoting United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996)). Queen itself is instructive of what the Fourth Circuit envisions for the relevance prong. There, Queen was charged with witness tampering, and in its prosecution, the government sought to introduce prior acts of witness tampering. Queen, 132 F.3d at 992-93. Unsurprisingly, the Fourth Circuit held that these past acts of witness tampering were admissible under Rule 404(b) to show Queen's intent to commit the charged witness tampering as it was virtually the same conduct. Id. at 997.

Under the second Queen requirement, evidence is considered necessary "where it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991) (internal quotation marks and citation omitted); see United States v. Smith, 441 F.3d 254, 262 (4th Cir. 2006) ("Evidence is necessary, even if it does not relate to an element of a charged offense, when it furnishes part of the context of the crime." (internal quotation marks omitted)). Significantly, courts must determine whether prior bad acts evidence is "necessary" under Rule 404(b) in "light of other evidence available to the government." Queen, 132 F.3d at 998 (internal quotation marks omitted). Thus, "as the quantum of other non-Rule 404(b) evidence

9

available to prove an issue unrelated to character increases, the need for the Rule 404(b) evidence decreases." United States v. Lighty, 616 F.3d 321, 354 (4th Cir. 2010); see id. ("[I]f the Rule 404(b) evidence is entirely cumulative to other non-Rule 404(b) evidence available to the government, the Rule 404(b) evidence may not meet the necessity prong."). Of course, the inverse is true as well, such that Rule 404(b) evidence is more likely to become necessary where the evidence intrinsic to the crime at issue is sparse or weak. See United States v. Wilson, 624 F.3d 640, 654 (4th Cir. 2010); United States v. DiZenzo, 500 F.2d 263, 266 (4th Cir. 1974).

Finally, as to the last factor in dispute, under the fourth Queen requirement, "[e]vidence sought to be admitted under Rule 404(b) must also satisfy [Fed. R. Evid.] Rule 403[] . . ." United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008). Under Rule 403, "damage to a defendant's case is not a basis for excluding probative evidence" because "[e]vidence that is highly probative invariably will be prejudicial to the defense." United States v. Grimmond, 137 F.3d 823, 833 (4th Cir. 1998). In other words, "general prejudice . . . is not enough to warrant exclusion of otherwise relevant, admissible evidence. Evidence may be excluded under Rule 403 only if the evidence is unfairly prejudicial and, even then, only if the unfair prejudice substantially outweighs the probative value of the evidence." Siegel, 536 F.3d at 319. Unfair prejudice exists "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence." Id. Generally speaking, "bad acts" evidence, admissible under Rule 404, is not barred by Rule 403 where such evidence "did not involve

conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995).

## A.

Brown contends that evidence that she previously possessed firearms on August 22, 2006 and October 19, 2012 is inadmissible other-bad-acts evidence under Rule 404(b). The government does not, nor could it, assert that evidence of these prior possessions qualifies as "intrinsic" evidence to the § 922(g)(1) offense that is the subject of this case. This conduct does not arise out of the same series of transactions as the charged offense, nor is evidence of the conduct required to complete the story of the offense. Moreover, the conduct was not a necessary preliminary to the charged offense. Therefore, evidence of the 2006 and 2012 conduct is inadmissible unless it satisfies the Queen factors. The government contends that the prior possessions in question are admissible to prove nearly all of the other purposes for which such evidence is admissible, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. More specifically, the government claims that the past possessions at issue are admissible to prove knowledge or intent to possess a firearm, which are directly implicated by elements of § 922(g)(1). See United States v. Scott, 424 F.3d 431, 435 (4th Cir. 2005) (reiterating that "a felon's possession of a firearm must be both voluntary and intentional to be punishable under § 922(g)(1)"). The government further asserts that the 2006 and 2012 possessions pass all three Queen factors in dispute, i.e., evidence of these possession is relevant, necessary, and not unduly prejudicial. The court concurs with the government as to the 2012 possession, finding for the reasons below that evidence as to this prior possession is admissible. With

11

respect to the 2006 possession, however, the court grants the motion to exclude evidence concerning that possession. The court will briefly address the 2006 possession before conducting a <u>Queen</u> analysis of the 2012 possession.

With respect to the 2006 conduct, the government conceded during the March 18 hearing that because this conduct occurred over ten years ago, its relevancy is more attenuated. The court agrees. In the 2006 incident, Brown, after being detained, admitted to the arresting officer that she had just bought the .22 caliber pistol from another individual that very night. While the mere lapse of time alone is insufficient to justify excluding evidence of the 2006 conduct, <u>United States v. Brown</u>, 398 Fed.Appx. 915, 917 (4th Cir. 2010), it is a factor the court can consider in determining whether the evidence is being offered to establish an element of the charged offense or offered only as propensity evidence. In addition to the lack of temporal proximity, several other factual dissimilarities with the case at bar further diminish the probative value of this conduct and weigh against its admissibility under <u>Queen</u>. When Brown was arrested in 2006: (1) the firearm recovered from her person was a loaded .22 caliber pistol (not a 9mm pistol); (2) the firearm was located in her lap in the passenger's seat rather than under the front driver's seat; (3) she was a juvenile at the time; and (4) she was charged through a juvenile petition with being a minor in possession of a firearm rather through grand jury indictment with being a convicted felon in possession of a firearm under § 922(g)(1). Though individually these dissimilarities might not suffice to justify exclusion of the 2006 conduct, collectively, they weaken the probative value of this evidence to such an extent that it ought not to be considered by the trier of fact.

12

This is especially the case given the availability of and court's finding vis-à-vis the 2012 conduct discussed below.

In relation to the government's intended introduction of evidence of the October 19, 2012 possession, the great weight of the precedent in the Fourth Circuit and beyond militates in favor of admissibility. With respect to the first and second Queen factors—relevancy and necessity—in order to sustain the § 922(g)(1) charge alleged in the indictment, the government will be required to prove beyond a reasonable doubt that on September 19-20, 2018: "(1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence." United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995); see 18 U.S.C. § 922(g)(1). Furthermore, "a felon's possession of a firearm must be both voluntary and intentional to be punishable under § 922(g)(1)[.]" Scott, 424 F.3d at 435. The government may prove the possession element in a § 922(g) prosecution by showing actual or constructive possession of the firearm. United States v. Moye, 454 F.3d 390, 395 (4th Cir. 2006).

The Fourth Circuit has repeatedly recognized that in a § 922(g) case, possession of other firearms at other times can be admitted under Rule 404(b) because it is relevant to the defendant's knowingly and intentionally possessing the charged firearms and frequently necessary to prove these elements. See, e.g., United States v. Stewart, 628 Fed.Appx. 179, 182 (4th Cir. 2015), cert. denied, 136 S. Ct. 1227 (2016) (holding that district court did not

13

abuse discretion in admitting evidence of defendant's two prior convictions for being a felon in possession of a firearm in a prosecution for a felon in possession); United States v. Trent, 443 Fed.Appx. 860, 863 (4th Cir. 2011) (affirming district court's admission of evidence that the defendant possessed uncharged firearms three and four years prior where, like the case before it, the defendant fled from the police in his vehicle and tried to dispose of those handguns); United States v. Comstock, 412 Fed.Appx. 619, 624 (4th Cir. 2011) (affirming Rule 404(b) admission of video of defendant walking around with at least one hunting rifle in felon-in-possession case, where he argued that he did not have knowledge of pistols in the trunk of his car); United States v. Teague, 737 F.2d 378, 381 (4th Cir. 1984) (Rule 404(b) evidence was admissible when defendant denied knowledge of gun found in vehicle); Brown, 398 Fed.Appx. at 917 (concluding that evidence of the defendant's prior possession of firearms was admissible and probative as to his intent to exercise dominion and control over firearm in case where government sought to prove constructive possession under § 922(g)); United States v. McDonald, 211 Fed.Appx. 222, 225 (4th Cir. 2007) (per curiam) (holding that evidence that defendant "had previously been arrested for the possession of a firearm was relevant to his knowledge and intent to possess the handgun recovered here"); Byers, 649 F.3d at 208–09 (ruling that testimony that defendant committed a shooting two years prior to the charged conduct was admissible as relevant and necessary to establishing motive, identity, and an intertwined scheme); see also United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003) ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his

14

knowledge that a firearm is present at a subsequent time (or, put differently, that his

possession at the subsequent time is not mistaken or accidental).”). [3]

Evidence of Brown's arrest and charge under § 922(g)(1)[4] in 2012 under

circumstances substantially similar to those in the present case is plainly relevant and

necessary in determining her knowledge of and intent to possess the firearm discovered by

officers under the driver's seat of the Toyota sedan on September 19-20, 2018. Indeed, the

facts of the 2012 conduct closely resemble those in this case. In 2012, Brown concealed a

loaded 9mm handgun under the driver's seat of a car which she was driving. Here, officers

observed, and video camera footage allegedly shows, Brown removing a loaded 9mm

handgun from beneath the driver's seat of a red Infiniti and placing it under the driver's seat

of a white Toyota. Moreover, in both instances, officers not only recovered a loaded 9mm

handgun, but also discovered a white, potentially contraband substance in the respective

vehicles. In short, Brown's past possession and concealment of a loaded 9mm pistol under

the driver's seat of a vehicle is probative of an element of § 922(g)(1), namely that she

knowingly and intentionally possessed the charged firearm.

Turning to the fourth Queen factor, which incorporates Rule 403's requirement that

the probative value of such evidence outweigh any prejudicial effect, the court concludes

that the evidence here meets that criterion, as well. In this case, the introduction of the

---

[3] Brown does not contest the third prong of the Queen test, namely reliability. The court would note that nothing before it at this time calls into question the reliability of the evidence the government intends to introduce vis-à-vis the 2012 conduct. The court need only to determine that a reasonable juror “could find that the defendant committed the prior act by a preponderance of the evidence.” United States v. Kenny, 973 F.2d 339, 344 (4th Cir. 1992). Further, the defendant need not be convicted of the conduct for evidence of that conduct to be considered reliable or necessary. See United States v. Comstock, 412 F. App’x 619, 623 (4th Cir. 2011).
[4] The § 922(g)(1) charge was later dismissed pursuant to a plea agreement. ECF No. 33, at 3-4.

evidence in question would not create a genuine risk that jurors would be excited to irrational behavior because that evidence does "not involve conduct any more sensational or disturbing than the crimes with which [Brown is] charged." Boyd, 53 F.3d at 637 (citing United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990)). Indeed, because there will already be evidence before the jury that Brown possessed a firearm, the prior possession of a firearm in 2012 is not any more provocative or inflammatory than the charged crime. Id. at 637; Comstock, 412 Fed.Appx. at 624 (specifically noting that prior acts of firearms possession "involved conduct substantially similar to the charged offense, lessening the danger that the jury would be provoked to behave irrationally"). Indeed, evidence of the 2012 possession is prejudicial to Brown's case only in the sense that it supports a legitimate inference that she knowingly and intentionally possessed the firearm at issue in this case. See Trent, 443 F. App'x at 863. This sort of "general prejudice" does not justify the exclusion of otherwise relevant, necessary, and reliable evidence. See Siegel, 536 F.3d at 319. Further, the court is cognizant of the Fourth Circuit's admonition that "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996). For these reasons, the court will allow the introduction of evidence related to the 2012 possession identified by the government. The court may limit such testimony at trial, however, to the extent it is needlessly cumulative. See Fed. R. Evid. 403.

**B.**

The court next considers the second category of evidence contained in the government's notice concerning threats of violence allegedly made by Brown to various

16

individuals and entities in the days leading up to the conduct charged in the indictment. The government contends that much of the evidence and/or testimony it expects to adduce regarding the threats allegedly made between September 15 and September 18, 2018 is "intrinsic" evidence inextricably intertwined with the § 922(g)(1) charge against her. The government further asserts that, to the extent such evidence is considered "extrinsic," it satisfies all four requirements under the Queen framework. Brown, advancing a far narrower view of what qualifies as "intrinsic" evidence, contends that threats implying her possession of firearm and suggesting her willingness to use a firearm are irrelevant in determining whether she possessed a firearm and is therefore inadmissible irrespective of whether it is classified as "intrinsic" or "extrinsic." The court concludes that most of the evidence regarding threats of violence involving the use of firearms in the days preceding the charged offense qualifies as "intrinsic" evidence, but that, in any event, it is admissible under Rule 404(b) because it satisfies all three of the disputed Queen factors. The court will, however, exclude threats evidence to the extent that it references the targeting of schools and/or children pursuant to Rule 403.

Evidence of prior uncharged conduct and/or acts is "intrinsic" if those acts are "inextricably interviewed or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the offense charged." Various courts have held that evidence is "inextricably intertwined" if it is (1) "necessary to complete the story" of the charged crime, United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994), (2) "provide[s] context relevant to the criminal charge[]," United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007), (3) "forms an 'integral and natural part of the witness's accounts of the circumstances

17

surrounding the offenses for which the defendant was indicted,'" United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (citation omitted), or (4) "contribute[s] to the narrative of the charged crime," United States v. Payne-Owens, 845 F.3d 868, 872 (8th Cir. 2017). See United States v. Samuels, 521 F.3d 804, 813 (7th Cir. 2008) ("Intricately related evidence is evidence that either completes the story of the crime on trial, the absence of which 'would create a chronological or conceptual void in the story of the crime,' or is 'so blended or connected that [it] incidentally involve [s], explain[s] the circumstances surrounding, or tend[s] to prove any element of, the charged crime.'"). But see United States v. Lentz, 282 F. Supp. 2d 399, 430 (E.D. Va. 2002), aff'd, 58 F. App'x 961 (4th Cir. 2003) ("[T]he [c]ourt is wary of extending the definition of 'intrinsic' acts to cover incidents in this case that merely 'set the stage' for the charged offense as the [g]overnment contends."); United States v. Hardy, 228 F.3d 745, 750 (6th Cir. 2000) (allowing general exception for "background circumstances" would allow exception that swallows the rule).

In the present case, the government intends to introduce evidence that the defendant threatened numerous individuals and entities from September 15 to September 18, 2018 before the charged conduct on September 19-20, 2018. The government argues that not only is the temporal proximity strong, but the threats in question related to "shooting up and robbing businesses, killing people, and having others do the same, stemming from conflicts [the defendant] had . . . [at] a gambling hall," all of which explain why the defendant might be in possession of a firearm days later in the parking lot of another gaming hall. ECF No. 33, at 12. The court agrees with the government that this threat evidence is necessary to provide context, is an integral and natural part of likely witnesses' accounts of the

circumstances surrounding the charged offense, and generally contributes to the narrative. For the government's witnesses to present a coherent and comprehensible story to the jury, they should be permitted to explain that various of these threats served as the basis for the felony extortion warrants which were served on Brown at the time she was found in possession of the charged firearm. In other words, and simply put, Brown's threats to shoot others is part and parcel of the story of the crime and an unavoidable incident of presenting other permissible evidence. Moreover, the government asserts a valid, non-propensity purpose for introducing this evidence, namely that it is probative of the Brown's motive to unlawfully possess a firearm and links her to the firearm she moved from one car to another and stowed under the driver's seat. See United States v. Payne-Owens, 845 F.3d 868, 872–73 (8th Cir. 2017) (affirming district court which classified as "intrinsic" and admitted into evidence Facebook messages and posts including threats of violence as it suggested a "motive to possess a real gun" in § 922(g)(1) case)[5]; see also Malloy v. United States, 186 A.3d 802, 809–11 (D.C. 2018) (affirming district court's admission into evidence of uncharged prior threat to shoot victim's car in a felony threats and unlawful firearms possession case as it was properly admitted as "context evidence, 'necessary to complete the story'"); United States v. Dumire, No. 7:15-CR-00098, 2016 WL 4507390, at *10 (W.D. Va. Aug. 26, 2016) (classifying as "intrinsic" and admitting into evidence in § 922(g)(1) case evidence that defendant assaulted and threatened his girlfriend and her mother for taking

---

[5] The court issued a verbal instruction admonishing the jurors to consider the threats evidence "on the issue of whether . . . the defendant on trial here had a motive to possess and nothing else." Id. at 873. This court intends to similarly instruct the jury.

away his firearms as it bears directly on an element of the offense, whether defendant knowingly and intentionally possessed the charged firearms).

In the alternative, the government submits that the threats evidence, even if subject to the Queen test, meets all four criteria for admissibility. Except for the defendant's threats to target schools and children (discussed below), the court agrees that the threats evidence is admissible. The threats, especially the threat allegedly captured on video in which Brown states that she would go to her car and get her "strap," is probative of, inter alia, her intent, motive, absence of mistake, and state of mind in possessing the firearm in question on September 19-20, 2018. Indeed, given the specificity of her repeated threats to shoot various people in the days leading up to the charged conduct, and given that these threats appear to relate to negative experiences at local gaming halls and, in one instance, explicitly refer to storing a firearm in a car, such threats are probative as to whether Brown knowingly and intentionally possessed a firearm in her car, which was parked in the parking lot of a gaming hall.

The defendant argues that the extortion warrants and facts underlying them have nothing to do with the intent to possess a firearm. The court disagrees. If, for example, a defendant threatened to blow up a neighbor's home or business, and was subsequently arrested for unlawful possession of explosives, it simply cannot be said that testimony from the neighbor that the defendant threatened to use explosives is irrelevant in determining whether he or she possessed explosives if possession is disputed. In short, the threats evidence is relevant and necessary under Queen. Though Brown does not contest the reliability of the threat evidence, the government nonetheless avers that many of the threats

20

were made in the presence of others, who are expected to consistently testify that it was Brown who made and threatened to carry out, or have others carry out, the threats described above. Moreover, the government claims to be in possession of a video in which Brown, at a gambling hall, can be heard referencing her "strap." The court does not have any reason at this time to be concerned about the credibility and reliability of the threats evidence.

Finally, regardless of whether the threats evidence is classified as "intrinsic" or "extrinsic," it must satisfy the requirements of Rule 403 to be admissible. See Fed. R. Evid. 403 (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). The court finds that the probative value of the aforementioned threats to individuals and business is not substantially outweighed by the risk of unfair prejudice except to the extent these threats refer to the targeting of schools or children. The court finds that evidence related to threats to schools or children may inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant. Therefore, testimony and/or other evidence related to alleged threats against schools and children will not be admitted at trial. While the other alleged threats are perhaps disconcerting, they are not so prejudicial that the court would be justified in excluding them. The court, however, may limit testimony and/or other threat-related evidence if its presentation becomes cumulative, wastes time, or tends to confuse the issues.

## C.

The third and final item the government indicated an intent to introduce is evidence of a form signed by Brown on November 1, 2016 when she was on supervision for a state felony conviction. This signed form, which was witnessed by her probation officer, notified Brown that she was not to "use, own, possess, transport or carry a firearm." ECF No. 31, at 2. The government asserts that this evidence may be introduced as direct evidence for purposes other than Rule 404(b) evidence, including "as a basis of her [Brown's] felony conviction." ECF No. 33, at 15. The government further asserts that this evidence also bears directly upon elements of the underlying § 922(g)(1) offense, as it shows Brown's state of mind and absence of mistake in possessing the firearm with which she was charged. It is unclear to the court, which was neither provided with nor has reviewed the probation form in question, whether the charged offense occurred during the probationary period for which the above-referenced condition in the form applied. There was some uncertainty on this factual issue during the hearing on March 19, 2019.

If the probationary period expired before the occurrence of the charged offense on September 19-20, 2018, then even if probative of the Brown's state of mind in some sense, it would not be probative of her state of mind in any relevant or applicable period. If, on the other hand, the charged conduct occurred during the probationary period, but Brown stipulates to a prior felony, then, again, the form becomes irrelevant insofar as the government intends to introduce it as a basis for her prior felony conviction. The government appeared to agree that to the extent Brown agrees to such a stipulation, the signed probation form is redundant and loses its relevancy. See United States v. Burton, 155 Fed. Appx. 92, 95 (4th Cir. 2005) (holding that district court in felon-in-possession case did

22

not err in admitting stipulation describing prior convictions for illegal possession of a firearm, where stipulation excluded details regarding the circumstances of prior convictions and included only identification of the convictions, and court issued limiting instructions). If, however, the charged offense occurred during the probationary period and the parties cannot agree to a felony conviction stipulation, then perhaps the probation form and its terms are admissible. This matter is therefore taken under advisement until the time of trial.

## IV.

For the aforementioned reasons, Brown's motion to suppress is **GRANTED in part** and **DENIED in part**. Brown's motion is **GRANTED** as to the 2006 conduct involving her possession of firearm but **DENIED** as to the 2012 conduct involving the same. Except for those threats referring to schools and children, Brown's motion to exclude the threats evidence is **DENIED**. Finally, because the admissibility of the probation form depends upon facts yet to be determined, the motion to exclude this item is **TAKEN UNDER ADVISEMENT**.

An appropriate Order will be entered.

Entered: 03-26-2019

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge